## Gana Estate

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Henry D. O'Connor*, for exceptants.

*Maximillian J. Klinger*, contra.

SAYLOR, J., November 22, 1963.—Decedent's son Joseph petitioned the court for payment to him of the family exemption of $1,000 claiming that at the time of his death and for some time prior thereto he and his father occupied and lived in the same household. A brother, Stephen, the executor, filed an answer, averring that after their mother's death all four children (two sons and two daughters) agreed with their father that he should live with them in their several homes for various periods of time and pay board to the child with whom he was at the time living. Stephen denied that Joseph was entitled to the family exemption as it was not decedent's intention to establish his domicile, residence or household with any one child to the exclusion of any other child.

The executor also averred that from September 1958 until his death in January 1963, a period of almost four and one-third years, decedent lived with every one of his four children during 14 separate periods. With Stephen, he lived for a total of 18 months; with Joseph, he lived 4 different times for a year and 16 days, and when he went to the hospital he had been residing with him continuously for nearly 6 months.

At the hearing on petition and answer, it was shown that decedent ate at the same table with petitioner and his wife, that she cleaned and laundered for him, and that he had "the whole house to himself", just as they had. Petitioner testified that before his father's last stay with him, Stephen told his brother that their father "had been with him long enough and it was

about time that I took over." Which he did. While living for the last time with Joseph, decedent told him that he was sick and tired of moving around and would rather stay in one place. Joseph's wife confirmed this latter statement.

The executor testified that he didn't "push" his father out, but admitted that he said it was time for Joseph to take him. It was also testified that the father had paid board at the rate of $15 to $20 a month to the child with whom he lived from time to time.

In his opinion, the hearing judge found that the payment of board did not constitute the father a guest of any child but, rather, as they all ate at a common table and the father had the freedom of the house, he was a member of the family. Hence, under section 211 of the Fiduciaries Act of April 18, 1949, P. L. 512, as amended, petitioner was entitled to the family exemption as decedent had resided with him from July 1962 until very shortly before he was removed to a hospital and died.

Executor filed exceptions to the decree making the award and to the hearing judge's failure to conclude that decedent was only a guest in the respective households and a member of none. He also contends that the father was "equally a member of the household of all his children and the family exemption should be awarded to all pro rata".

The question is this: Is petitioner under the statute correct in claiming that he was a member of the household of the decedent at the time of his death?

Section 211 of the Fiduciaries Act of 1949, as amended by the Act of November 10, 1959, P. L. 1450, provides:

"The spouse of any decedent dying domiciled in the Commonwealth, and if there be no spouse, or if he has forfeited his rights, then such children as are members of the same household as the decedent, may retain or

claim as an exemption, either real or personal property, or both, not theretofore sold by the personal representative, to the value of one thousand dollars."

In its comment on the amendment of February 23, 1956, P. L. 1084, which added to the section the phrase: "are members of the same household as the decedent," the Joint State Government Commission stated that it was intended to make it clear that a child living in the same household as the decedent is entitled to the exemption regardless of who may be technically head thereof. The 1959 amendment raised the exemption from $750 to $1,000.

In Shank Estate, 399 Pa. 656 (1960), it was held that the exemption was properly claimed by the son with whom the decedent " 'made his home' " even though he paid board to the son.

The court found that despite his payment of board and other "items", the father was a person of such close blood relation that his home and that of the son were one and the same. This decision overruled the lower court which had found that the claimant was merely a boarder and not a member of decedent's household.

Cited was Niedzielski Estate, 4 D. & C. 2d 290, 292 (1955), where the word " 'household' " was construed to signify "a family residing together in one dwelling using common living quarters and facilities under such domestic arrangements and circumstances, as create a single family unit or establishment."

Exceptant argues that in Shank Estate the facts were materially different than here, because there decedent had resided with the claimant for upwards of five years prior to his death while in our case decedent has resided but six months before his death, and for long periods before that he had resided with his three other children. This argument is without merit. The important element is that at the time of his death dece-

dent in the instant case was a part of claimant's household.

Also without merit is exceptant's contention that by reason of the family agreement every child's household was merely the boarding home of the father, or, in the alternative, the household of each and every child with whom the father lived from time to time. Under the act and the decisions, it is the household of which decedent died a member that gives the child the right to the exemption.

While it may be fortuitous that it was the household of Joseph and not that of Stephen where the father died, it was only that of Joseph of which he was a member at the time of his death.

Under the facts in the instant case, the hearing judge properly awarded the family exemption to Joseph. This award was also correct in the broader sense of the law.

Historically, the purpose of the "widow's exemption" was to provide her with a means of subsistence during the trying period immediately following her husband's death. For this reason the "exemption" is a first preferred claim against the estate. As stated in 3 Hunter Pennsylvania Orphans' Court Commonplace Book, page 18:

"The exemption provision is not a statute of distribution, and the exemption is not an inheritance. It is wholly a gratuity, based upon the existence of the family relationship."

It follows that allowance and payment of the exemption should be governed by the most simple rules. Disputes are to be avoided if possible. This is the patent intention of the draftsmen of the Fiduciaries' Act of 1949, as shown by their comments to section 211 and the 1956 amendment thereto. The legislature intended cash support and not a law suit.

In our opinion a heavy burden of proof is placed upon anyone seeking to deprive the surviving spouse or, in the absence of such spouse, the decedent's children who "are members of the same household as the decedent" of the family exemption. We believe that the personal representative is to be encouraged to give early recognition to, and to make prompt payment of, the family exemption to the person entitled. In the instant case, exceptant has failed to carry the burden of proof.

Accordingly, the exceptions are dismissed and the opinion and decree of the hearing judge are confirmed absolutely.